IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE ROGERS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| REBECCA BLAIR, et al. | : | NO. 24-1534 |
| | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                July 28, 2025

In this personal injury case, Plaintiff claims that he sustained injuries from a car accident in November 2023, when he was rear-ended by Defendant Blair, who was driving a vehicle owned by Defendant Lennox International, Inc. Plaintiff has filed three opposed motions in limine; (1) to have him deemed full tort as a matter of law, Doc. 17, (2) for a finding in his favor on causation, Doc. 19, and (3) to exclude evidence relating to whether he was providing rideshare services at the time of the accident and whether he and his passenger experienced injuries caused by the accident. Doc. 20. Defendants, in turn, have filed a motion in limine to preclude testimony on Plaintiff's future medical costs. Doc. 22.

**A.      Full-Tort**

Plaintiff seeks to be deemed full tort as a matter of law and to preclude any argument that he elected limited tort coverage. Doc. 17. He argues that Defendants have not offered any evidence that he executed a limited tort election form. Id. ¶¶ 4, 16. Defendants respond that they should be allowed to present testimony from the insurance

company's records custodian, along with insurance documents, to show that Plaintiff knowingly chose the limited tort option and that a factual dispute remains on this issue. Doc. 24 ¶¶ 3, 10. The proposed testimony and documents have not been provided to the court.[1]

The Motor Vehicle Financial Responsibility Law (MVFRL) states that within 45 days of coverage, insurers must notify the insured of the two types of insurance options -- full tort and limited tort -- and explain the legal effects and cost differences of these options. 75 Pa.C.S. § 1705(a). A motorist who wishes to choose the limited-tort option must sign an election form or else be deemed to have chosen full-tort coverage and be responsible for the full-tort premium. Id. § 1705(a)(3). An individual's belief that he had limited tort coverage, demonstrated through their conduct or payment of lower premiums, is insufficient; a written election form is required to establish limited tort status. See Donnelly v. Bauer, 720 A.2d 447, 448 (Pa. 1998); 75 Pa.C.S. § 1705(a). This is significant because. although a Plaintiff who is bound by limited-tort coverage can recover economic losses, he cannot recover noneconomic losses, such as pain and suffering, unless he demonstrates a "serious injury." 75 Pa.C.S. § 1705(d).

Here, there appears to be a factual dispute as to whether Plaintiff executed a limited-tort election form, or instead the default full-tort coverage applies. The only evidence provided is Plaintiff's testimony that he was unsure which coverage he elected. Deposition of Bruce Rogers at 28 ("Rogers Dep.") (attached to Doc. 24 at 18-36). It is

---

[1]Plaintiff does not rely on any failures in Defendants' discovery production as a basis for his motion.

thus unclear whether Defendants' proposed testimony from the records custodian in conjunction with the referenced insurance documents will satisfy the requirements of the MVFRL. I note that, because it is an affirmative defense, Defendants bear the burden of proving limited-tort election. Sanderson-Cruz v. United States, 88 F. Supp. 2d 388, 392 (E.D. Pa. 2000). Furthermore, Plaintiff's uncertainty as to which coverage he had is not determinative. See Vaughan v. Williams, 725 EDA 2023, 2024 WL 1231352, at *3-5 (Pa. Super. Mar. 22, 2024) (affirming trial court's decision finding the plaintiff elected limited tort as a matter of law, focusing its analysis on the signed tort election form and associated policy documents, as opposed to phone call transcripts and oral statements).

Plaintiff's decision to raise this issue through a motion in limine rather than a motion for partial summary judgment, coupled with the absence of the relevant insurance documents, renders resolution of this matter ill-timed. Accordingly, I will deny Plaintiff's motion to have him deemed full tort as a matter of law.

### B. Causation

Plaintiff asks the Court to find in his favor on the element of causation or otherwise preclude the defense from contesting causation at trial. Doc. 19. He claims that Defendants' expert conceded that the accident caused *some* injury and that as a matter of law, a jury must therefore find that the defendant's negligence was a factual cause of *some* injury. Id. ¶¶ 7, 11. Defendants concede that their expert determined that several injuries were caused by the accident, but contend that factual disputes remain regarding which injuries are attributable to the incident and whether those injuries have since resolved. Doc. 25 ¶ 8.

Pennsylvania courts have consistently held that where both parties' experts agree that an accident caused some injury, despite disagreement as to the extent, duration, and permanency of any injuries, "the jury may not find the defendant's negligence was not a substantial factor in bringing about at least some of plaintiff's injuries." Andrews v. Jackson, 800 A.2d 959, 962 (Pa. Super. 2002) (citing Neison v. Hines, 653 A.2d 634, 637 (Pa. Super. 1995); Mano v. Madden, 738 A.2d 493, 495 (Pa. Super. 1999)).  In Andrews, the court concluded that

> the jury must find the accident was a substantial cause of at least some injury, where both parties['] medical experts agree the accident caused some injury.  While the jury may then find the injuries caused by the accident were incidental or non-compensable and deny damages on that basis, the jury may not simply find the accident did not "cause" an injury, where both parties' medical experts have testified to the contrary.

Id. at 964.  In so doing, the Superior Court reaffirmed its prior holding in Mano, which is factually similar to the present case.

In Mano, the defendant's vehicle rear-ended the plaintiff's vehicle, and the plaintiff's medical expert testified that the accident caused problems including sprain and strain of the back and neck.  738 A.2d at 496.  The defendant's medical expert refuted the plaintiff's claims of continuing pain or physical limitations, which had resolved, but conceded that plaintiff had suffered neck and back strains as a result of the accident.  Id. At the close of evidence, the trial court granted the plaintiff's motion for a directed verdict on the issue of negligence, after which the jury found that the accident was not a substantial cause of the plaintiff's injuries and did not award plaintiff any damages.  Id. at

495. The trial court granted the plaintiff's motion for a new trial on the ground that the jury's verdict was against the weight of the evidence. Id. On appeal, the Supreme Court affirmed, stating "[i]t is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question." Id. at 497 (citing Rozanc v. Urbany, 664 A.2d 619 (Pa. Super. 1995)).

Pennsylvania courts have routinely reaffirmed the holding of Mano and Andrews in personal injury actions where both parties' medical experts testified that the plaintiff suffered at least some injury as a result of the accident in question. See, e.g., Bostanic v. Barker-Barto, 936 A.2d 1084, 1088-89 (Pa. Super. 2007) (jury decision that defendant's negligence was not a factual cause in bringing about plaintiff's harm was against weight of evidence where defendant's expert conceded that plaintiff suffered a cervical sprain or sprain injury). Moreover, cases which distinguish Andrews do so on the basis that the parties' experts disagree as to whether a defendant's negligence caused any injury whatsoever. See, e.g., Sicchitano v. Presb'n Med. Ctr. of Wash., No. 1737 WDA 2014, 2016 WL 400480, at *7 (Pa. Super. Feb. 1, 2016) ("Whereas experts for both parties [in Andrews] found injury caused by an accident . . . there was no such agreement among the parties' experts in the case before us.").

Plaintiff's expert, Dr. James C. Barrese, M.D., performed a medical evaluation of Plaintiff on March 26, 2024, and issued a report on August 5, 2024, in which he opined that the accident caused Plaintiff to suffer low back pain, a lumbar strain, aggravation of pre-existing L5-S1 spondylolisthesis, and right S1 radiculopathy. Narrative Report by

Dr. James C. Barrese, M.D., Doc. 19-2 at 4 ("Dr. Barrese Report"). Defendants' expert, Dr. Richard A. Close, M.D., performed an independent medical examination of Plaintiff on June 17, 2025. Independent Medical Examination by Dr. Richard A. Close, M.D., Doc. 19-4 at 1 ("Dr. Close Report"). Dr. Close concluded that Plaintiff sustained a cerebral concussion, cervical sprain and strain, and lumbar sprain and strain because of the accident, all of which resolved. Id. at 4. The doctors disagree as to other causation questions, for example, whether the accident contributed to Plaintiff's spondylolisthesis. Compare Dr. Barrese Report at 4 with Dr. Close Report at 4. Thus, although the parties dispute the nature and extent of Plaintiff's injuries, Defendants acknowledge that the accident caused some injury.

Accordingly, Andrews and its progeny preclude Defendants from arguing at trial that the accident did not cause any injury to Plaintiff. However, this conclusion does not entitle Plaintiff to prevail on the issue of factual or proximate causation as to any specific injury Plaintiff suffered. The parties' experts disagree as to diagnoses related to the accident, other causes for Plaintiff's injuries, and the nature and extent of any current symptoms or future treatment. Such questions, as well as whether and to what extent damages are appropriate as to any particular injury or injuries, remain for the jury to decide. See Andrews, 800 A.2d at 965 ("[A] jury may not disregard the uncontradicted testimony of both party's medical experts that Appellant suffered some injury in the accident, although the jury may then deny damages on the basis that the injury was not serious enough to warrant compensation."). Plaintiff's motion will be granted insofar as it seeks to preclude Defendants from arguing at trial that the accident caused no injury;

however, it is denied to the extent that it seeks to prevent Defendants from disputing the existence or extent of any specific injury.

### C. Evidence of Ridesharing and Injuries

Plaintiff moves to exclude evidence that at the time of the accident he was transporting a passenger pursuant to a ride-sharing arrangement without using a ride-sharing app, that he did not disclose this arrangement to his insurance carrier, and that his passenger was not injured in the accident. Doc. 20 ¶¶ 5-11. He also moves to preclude any argument that he had ongoing symptoms from his pre-existing herniated disc at the time of the crash. Id. ¶ 12. I address each issue in turn.

1. Plaintiff's ridesharing arrangement and statements to insurance company

Plaintiff works as a ride-share driver. Rogers Dep. at 10. He testified that at the time of the accident, he was transporting his friend, Margaret Abel, to an appointment in exchange for $40, but that he was not acting as a ride share driver on that day and did not inform his insurance carrier that he was working as a ride share driver. Id. at 10-11, 30. Plaintiff claims that introduction of this testimony is irrelevant and unfairly prejudicial, as it could create a negative impression of him. Doc. 20 ¶¶ 11, 23. Defendants respond that evidence that Plaintiff was accepting payment to transport Ms. Abel is relevant to his credibility, because he "has testified and stated to medical providers that he was not working at the time of the accident." Doc. 26 ¶ 11. Defendants do not appear to contest exclusion of evidence that Plaintiff did not inform his insurance company that he was being paid to drive a passenger that day.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issue, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Defendants do not claim that whether Plaintiff was engaged in a ride-sharing arrangement is central to any insurance coverage dispute or that it triggers a policy exclusion. Instead, their sole contention is that Plaintiff's statement that he was not working at the time of the incident is misleading and reflects on his credibility regarding his claimed injuries. Doc. 20 ¶ 11. I find that Plaintiff's transportation of Ms. Abel as part of a ride-sharing arrangement, or whether this activity constitutes "working," is at best only minimally relevant to Plaintiff's credibility. Furthermore, the potential for unfair prejudice and confusion of the issues substantially outweighs any limited probative value this evidence may have, because evidence that Plaintiff was working "under the table" or was a ride-share driver could divert attention from the pertinent issues in this case. Accordingly, I will preclude the defense from eliciting evidence of Plaintiff's alleged involved in a ride-sharing arrangement at the time of the accident. Additionally, I will grant, as unopposed, Plaintiff's motion to preclude any reference to Plaintiff's failure to report this arrangement to his insurance carrier.[2]

---

[2]This ruling will not preclude the defense from cross-examining Plaintiff on being paid for driving should Plaintiff offer evidence to the contrary in his case in chief.

2. <u>Evidence concerning passenger's injuries</u>

Plaintiff seeks to preclude Defendants from introducing evidence that Ms. Abel was not injured. Doc. 20 ¶¶ 6, 11. Defendants respond that evidence of whether Ms. Abel was injured is relevant to the intensity of the impact and whether Plaintiff's claimed injuries are a result of prior degenerative issues, as opposed to the accident. Doc. 26 ¶ 24. The severity of the accident is an issue in this case, with the parties sharply disputing the speed at which Defendant Blair rear-ended Plaintiff. For example, Plaintiff alleges, "he was rear ended by Defendant Blair, who was operating a vehicle . . . at a high rate of speed," Doc. 20 ¶ 1, while Defendants characterize the collision as "a low speed, rear-end motor vehicle accident." Doc. 22 ¶ 1. However, whether or not Ms. Abel suffered any injuries is only marginally relevant to assessing the force of the impact. Furthermore, the limited probative value of this evidence is substantially outweighed by the risk that the jury may be misled into believing that the injuries (or lack thereof) of one person are indicative of the injuries sustained by another passenger. Additionally, allowing such evidence would effectively result in a "trial within a trial," as both parties would then need to litigate whether another individual was injured in the accident, likely requiring additional witnesses and medical experts. In sum, Defendants have alternative ways to present evidence regarding the intensity of the collision that are both more probative and less likely to cause unfair prejudice. Therefore, I grant this portion of the motion and preclude any reference to Ms. Abel's injuries or lack thereof.

3.  <u>Evidence concerning Plaintiff's pre-existing injury</u>

Plaintiff moves to preclude Defendants from asserting that he was experiencing symptoms from his pre-existing herniated disc prior to the accident. Doc. 20 ¶ 12. As discussed above, the parties dispute both the nature and extent of Plaintiff's injuries as well as their causal link to the accident. Both parties' experts acknowledge that Plaintiff suffers from a degenerative back condition, spondylolisthesis. Plaintiff contends that all symptoms related to this condition had resolved before the accident, which allegedly caused a reaggravation, while Defendants argue that the condition was pre-existing and unrelated to the accident, and also note that Plaintiff had stopped receiving injections for back pain, thereby minimizing the claimed injury.

For the same reasons I partially denied Plaintiff's prior motion to establish causation as a matter of law, I will also deny this motion. Whether or not Plaintiff suffered a reaggravation of his spondylolisthesis presents a factual dispute properly resolved by the jury, aided by expert testimony.

**D.    Future Medical Treatment**

Defendants move to preclude any testimony or reference to Plaintiff's claims for future medical treatment and associated expenses, contending that Dr. Barrese's opinions regarding the costs of such treatment are insufficiently precise, lack adequate support, and fail to account for the fact that Plaintiff has not undergone any of the recommended treatments since the incident and he has not exhausted conservative treatment options. Doc. 22 ¶¶ 10-15 & at 4-6. Plaintiff responds that Dr. Barrese provides delineated costs for future treatment and argues that the jury should be permitted to hear and consider

these costs in determining whether they are related to the crash and are reasonable. Doc. 23 ¶¶ 11-15 & at 10-13.

"A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify" to his or her opinions, so long as "(a) the expert's . . . specialized knowledge will help the trier of fact . . . ; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. These substantive restrictions on the admission of expert testimony are commonly referred to as qualifications, reliability, and fit. Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The Third Circuit has described Rule 702 as prescribing a "liberal policy of admissibility." Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008). Nevertheless, courts bear an important gatekeeping function to ensure that expert opinions are both relevant and reliable before permitting such opinions to be presented to a jury. See Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997).

Here, Dr. Barrese is a board-certified neurosurgeon, licensed in Pennsylvania and New Jersey. See Doc. 23-1 (Curriculum Vitae of Dr. Barrese). He based his conclusions on a review of eight categories of records as well as a physical examination of Plaintiff. Dr. Barrese Report at 1-2. Dr. Barrese recommends the following treatments and procedures; (1) periodic x-rays and MRIs of the lumbar spine, performed annually, to monitor spinal integrity and address any exacerbations of pain, (2) periodic injections to

manage traumatic mechanical pain symptoms, (3) ongoing medical management through regular visits to a pain management physician for prescription medication, (4) physical therapy, and (5) surgery, which Dr. Barrese expects will likely be necessary to ameliorate the Plaintiff's spondylolisthesis. Id. at 5. Dr. Barrese projects that the following medical costs will be incurred by Plaintiff:

- Periodic x-rays in excess of $750 per image;
- Periodic MRI scans in excess of $2,500 per image;
- Periodic injections in excess of $15,000 per set;
- Periodic pain management visits in excess of $125 per visit;
- Lumbar surgery in excess of $85,000.

Id. Dr. Barrese provides estimates for how frequently each recommended treatment and procedure should be administered. Id.

Defendants challenge both the reliability and usefulness of Dr. Barrese's testimony regarding future medical expenses. First, they argue that Dr. Barrese's cost estimate fails to provide the jury with sufficient information to award damages without engaging in speculation. Doc. 22 ¶ 24. This is not the case. Dr. Barrese offers specific costs for each procedure or treatment he opines Plaintiff will require, together with estimated frequencies.[3] Defendants do not dispute Dr.

---

[3] Defendants cite the principle that a plaintiff must establish not only that future medical expenses will be incurred, but also provide a reasonable estimate of the costs of those services. Doc. 22 ¶ 17 (citing Mendralla v. Weaver Corp., 703 A.2d 480, 485 (Pa. Super. 1997)). However, in Mendralla, unlike here, the experts failed to offer any estimated costs for future treatments. 703 A.2d at 485.

Barrese's qualifications as a neurosurgeon, and the cost estimates are presumably informed by his knowledge, experience, and expertise.  Although Defendants object to Dr. Barrese's phrasing that certain costs will "exceed" a certain amount, see id. ¶ 26, such criticism relates to the weight of his testimony rather than its admissibility and can be addressed through cross-examination.

Second, Defendants contend that Dr. Barrese's cost estimates would not be helpful to the jury because Dr. Barrese fails to demonstrate the necessity of certain estimated costs.  Doc. 22 ¶¶ 21-23.  They highlight Dr. Barrese's opinion that surgery—the single largest projected cost—would only be necessary if conservative treatments fail, and note that Plaintiff has yet to pursue those conservative options.  Id. ¶ 23.  However, when the issue concerns prognosis, a medical expert is not required to express an opinion with the same degree of definiteness as is required in a causation question.  See, e.g., Repa v. Napierkowski, Civ. No. 19-101, 2022 WL 1322529, at *2 (W.D. Pa. May 3, 2022) (citing Boyle v. Pa. R.R. Co., 170 A.2d 865, 867 (Pa. 1961)).  In Repa, for instance, the court rejected a motion to exclude an expert opinion regarding the likelihood of future amputation as speculative, where the expert opined that the plaintiff was at significant risk of infection and therefore at significant risk of needing amputation.  Id.

Here, as in Repa, Dr. Barrese's report explains why he believes surgery is "reasonably probable."  Dr. Barrese Report at 5.  At trial, the parties can question Dr. Barrese concerning the basis for this conclusion and how he currently

quantifies the risk of future surgery. However, at this stage, Dr. Barrese's testimony can reasonably be expected to assist the trier of fact. I will therefore deny Defendants' motion.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE ROGERS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| REBECCA BLAIR, et al. | : | NO. 24-1534 |
| | : | |

**O R D E R**

AND NOW, this 28th day of July, 2025, upon consideration of the parties' motions in limine, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion in limine to deem him full tort as a matter of law (Doc. 17) is DENIED.
2. Plaintiff's motion in limine to prevent Defendants from disputing causation (Doc. 19) is GRANTED IN PART and DENIED IN PART. The motion is granted to the extent it seeks to preclude Defendants from arguing that the accident caused no injury; however, it is denied to the extent it seeks to preclude Defendants from disputing the existence or extent of any specific injury.
3. Plaintiff's motion in limine (Doc. 20) is GRANTED IN PART and DENIED IN PART. To the extent Plaintiff seeks to preclude any argument that he had ongoing symptoms from his pre-existing herniated disc at the time of the crash, the motion is DENIED. To the extent Plaintiff seeks to preclude the defense from introducing evidence of Plaintiff's involvement in a ride-sharing arrangement, to preclude any reference to Plaintiff's failure to report this arrangement to his insurance carrier, and to preclude evidence regarding his passenger's injuries, the motion is GRANTED.
4. Defendant's motion in limine to preclude any testimony or reference to Plaintiff's claims for future medical treatment (Doc. 22) is DENIED.

BY THE COURT:

/s/ Elizabeth T. Hey
ELIZABETH T. HEY, U.S.M.J.

1